UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
IN ADMIRALTY

MARKEL AMERICAN INSURANCE
COMPANY,

      Plaintiff,

                                  Case no. 04-civ-10795-MLW

vs.

ROBERT MADONNA,

      Defendant/Counter-Plaintiff,

vs.

MARKEL AMERICAN INSURANCE
COMPANY and CAPE WIDE INSURANCE
AGENCY, INC.,

      Counter-Defendants.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

MORRISON MAHONEY LLP
Attorney for Plaintiff
One Providence Washington Plaza
6th Floor
Providence, RI 02903-7141
(401) 331-4660


GOLDMAN & HELLMAN
Attorneys for Plaintiff
315 S.E. 7th Street
Suite 200
Fort Lauderdale, FL 33301
(954) 356-0460

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES………………………………………………….....3

STATEMENT OF THE CASE…………………………………………….........5

    POINT I………………………………………………………….............8

          PLAINTIFF IS ENTITLED TO SUMMARY
          JUDGMENT BECAUSE NO GENUINE ISSUE
          OF MATERIAL FACT REMAINS TO BE
          DETERMINED

    POINT II…………………………………………………………..10

          ELDRIDGE AND CAPE WIDE INSURANCE
          AGENCY WERE ACTING AS THE AGENTS
          FOR THE DEFENDANT IN SEEKING TO OBTAIN
          MARINE INSURANCE COVERAGE

    POINT III…………………………………………………………14

          THE PLAINTIFF CANNOT BE LIABLE FOR ANY
          FAILURE BY THE DEFENDANT'S OWN AGENT
          TO  OBTAIN MARINE INSURANCE COVERAGE

    POINT IV…………………………………………………………..17

          BECAUSE OF MADONNA'S AGREEMENT TO A
          SETTLEMENT WITH CAPE WIDE FOR  $270,000.00,
          MARKEL'S LIABILITY TO THE  DEFENDANT
          CANNOT EXCEED $13,959.00

    CONCLUSION…………………………………………………...19

          PLAINTIFF IS ENTITLED TO SUMMARY
          JUDGMENT BASED UPON THE AGENCY
          STATUS OF THE BROKER

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)……………………………………………………………..8

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986)……………………………………………………………..8

*Century Indemnity Co. v. Jameson*
    131 N.E.2d 767, 333 Mass. 503 (1956)……………………………………...12

*Dreiling v. Maciuszek*
    1992 A.M.C. 2482 (N.D. Il. 1991)…………………………………………...11

*Garshman Co., Ltd. v. General Electric Co.*
    176 F.3d 1 (1st Cir. 1999)……………………………………………………18

*Grande v. St. Paul Fire & Marine Insurance Co.*
    365 F.Supp.2d 57, 2005 A.M.C. 1620 (D. Me. 2005)...………………………15

*Haeuber v. Can-Do, Inc.*
    666 F.2d 275, 1984 A.M.C. 1214 (5th Cir. 1982)………………………………14

*Illinois Constructors Corp. v. Morency & Assoc., Inc.*
    794 F.Supp. 841, 1993 A.M.C. 203 (N.D. Il. 1992)……………………………15

*Jefferson Insurance Co. v. Huggins*
    2000 A.M.C. 2357 (N.D. Tex. 2000)……………………………………..10, 11

*Jefferson Insurance Co. v. Roberts*
    349 F.Supp.2d 101 (D. Mass. 2004)…………………………………9, 10, 11, 12

*La Reunion Francaise, S.A. v. Barron*
    1998 A.M.C. 2144 (C.D. Cal. 1998)…………………………………………...11, 13

*Lien Ho Hsing Steel Enterprise Co. v. Weihtag*
    738 F.2d 1455, at 1458 (9th Cir. 1984)………………………………………12

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*
    475 U.S. 574, at 587 (1986)……………………………………………………..8

*Riley v. Commercial Insurance Agency*
    1999 Mass.App.Div. 243 (1998)…………………………………………...11, 12

*Royal Insurance Company of America v. Cathy Daniels, Ltd.*
 684 F.Supp. 786 (S.D.N.Y. 1986)……………………………………………15

*Temple v. Federal Deposit Insurance Corp.*
 988 F.2d 24 (5th Cir. 1993)…………………………………………..….18

*Underwriters at Lloyd's v. Giroire*
 1998 A.M.C. 2153 (S.D. Fla. 1998)………………………………………11

*Washington Int'l Insurance Co. v. Mellone*
 1991 A.M.C. 996 (C.D. Cal. 1990)…..…………………………………… 11

## **STATUTES**

Federal Rule of Civil Procedure 9(h)…………………………………………5

## **TREATISES**

43 AmJur2d *INSURANCE* (1982)…………………………………………..11

Vol. 3, *Couch on Insurance*, (2d ed.)……………………………………….11

Parks, *The Law & Practice of Marine Insurance
 and General Average*(1987)……………………………………………...11

## STATEMENT OF THE CASE

This is a very simple litigation commenced under Rule 9(h) of the Federal Rules of Civil Procedure involving a dispute as to the coverage afforded for a pleasure craft that was purchased by the Defendant at some point in June of 2003. Robert Madonna owned two (2) existing vessels prior to that time, both of which were insured by the Plaintiff, and utilizing the services of his long-time personal insurance brokers at Cape Wide Insurance Agency, Inc., he sought to have the coverage transferred from those existing vessels to the ones that he was in the process of purchasing. Mr. Madonna contacted William Eldridge, the owner and president of Cape Wide, and informed the said broker of the newly purchased vessels, the sale of the two (2) vessels that were the subjects of the existing marine insurance policies, and of his need to have the coverage transferred to the new vessels. This litigation involves the question of whether Markel should be held to afford coverage for one of these two (2) vessels, a 2000 30 ft Crosby Hawk which was destroyed and for which a claim was submitted as a result of a fire that took place at the Crosby Yacht Yard on December 10, 2003.

The said vessel is alleged to have had an insured value of $283,959.00

Following receipt of the first notice of claim received via fax from Cape Wide, Markel rejected the claim for the destruction of the 2000 30 ft Crosby Hawk after its own in-house investigation revealed that the company had never received any request from Cape Wide for a transfer of the coverage afforded under Markel's policy of marine insurance no. RD0000503.

Having been advised initially via an investigator working for Cape Wide's malpractice insurer that the vessel which had been destroyed in the fire was a 2003 42 ft

Tiara yacht with a value of $697,000.00, Markel commenced an action in the federal district court in Boston seeking a declaratory judgment that no coverage was afforded for that vessel's loss. The Complaint for Declaratory Judgment was amended after Plaintiff was subsequently advised that this initial information from the investigator was incorrect, and that it was the aforesaid 2000 30 ft Crosby Hawk that was destroyed and which accordingly was the subject of Madonna's claim.

The material facts not in dispute *__for purposes of this motion for summary__* *__judgment only__*, illustrate beyond cavil or rational dispute that Plaintiff is entitled to an award of summary judgment. The material facts not in dispute demonstrate conclusively that the admitted neglect of Madonna's marine insurance broker resulted in Markel not insuring the vessel for which claim was submitted.

Having received instructions from his client to transfer coverage from the existing vessels that were insured by Markel to the newly acquired vessels, Mr. Eldridge claims to have first sought to transfer that coverage via a fax that he sent to Markel on June 16, 2003. This first fax to Markel concerned the 2003 42 ft Tiara yacht. Then, on June 24, 2003, Eldridge sent a fax requesting a transfer of coverage with respect to the 2000 30 ft Crosby Hawk.

The material facts not in dispute demonstrate that no acknowledgment or response of any kind was ever received from Markel.

The material facts not in dispute demonstrate that a substantially higher premium would have been assessed by Markel and would have been communicated to Cape Wide in the event that coverage had been transferred from a vessel valued at $142,100.00 to another vessel valued at $283,959. The material facts in dispute demonstrate that no

response or other communication of any kind was ever sent by Markel or received by Cape Wide regarding such an increase in premium.

Most critically, the material facts not in dispute demonstrate that Eldridge has acknowledged his own professional negligence in having failed to utilize either of what he freely admits were at least two (2) separate and distinct methods that were part of Cape Wide's standard office procedures for following up on all such requests for coverage or for transfers of coverage communicated to Markel.

Whether or not Markel did or did not receive a request from Eldridge for a transfer of coverage from a 2000 33 ft Pursuit vessel with an insured value of $142,1000.00 to the 2000 30 ft Crosby Hawk newly purchased by Madonna, there is no dispute that no policy was ever issued by Markel.

The material facts not in dispute demonstrate that Eldridge and Cape Wide were acting at all times in the familiar capacity of marine insurance brokers representing a member of the public as their client. Eldridge and Cape Wide had no authority to bind Markel, but were in fact limited to the ability to submit completed applications. As mere brokers acting agents for the insured, Eldridge and Cape Wide would then have been left in the position of having to wait for Markel to respond with a quote. Taking the quote to a waiting client, Eldridge and Cape Wide would then have been left in the position of requesting and waiting for issuance of a binder from Markel.

Finally, the material facts not in dispute demonstrate that having brought suit against Cape Wide for the broker's professional neglect in having failed to obtain the $283,959.00 in insurance coverage that he required, Madonna has accepted a settlement from Cape Wide in the sum of $270,000.00.

**ARGUMENT**

**I.**

**PLAINTIFF IS ENTITLED TO SUMMARY
JUDGMENT BECAUSE NO GENUINE ISSUE OF
MATERIAL FACTS REMAINS TO BE DETERMINED**

Summary judgment is appropriate where there is no genuine issue of material fact remaining in dispute in a case in litigation. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), In opposing a summary judgment motion filed by the Plaintiff Markel American Insurance Company, Mr. Madonna must submit competent evidence which in and of itself would be sufficient to satisfy that rigorous and demanding standard of proof that would be required of him at the time of any trial, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and it insufficient for the Defendant to do nothing more than contend to this Court that some issues remain unproven, or that merely tangential or legally unimportant differences remain.

Summary judgment must be granted where the evidence is "so one-sided that one party must prevail as a matter of law." *Id.*, at 251-52. "Where the record as whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, at 587 (1986).

Mr. Madonna must come forward with evidence sufficient to demonstrate to this Court that he finds himself without marine insurance coverage due to some fault or neglect on the part of Markel. Summary judgment here in favor of Markel is appropriate because the material facts not in dispute demonstrate conclusively that Madonna finds himself without marine insurance coverage due to the admitted fault or neglect of that

party which acted as his own agent and which failed to obtain the coverage that the Defendant sought.

As will be argued and established conclusively, *infra*, under both the federal admiralty law and under the law of the State of Massachusetts, William Eldridge and Cape Wide Insurance Agency were acting at all relevant times as the agents for Robert Madonna, and accordingly, any failure to provide or to procure for Mr. Madonna marine insurance coverage for the 2000 30 ft Crosby Hawk that was destroyed in the marina fire of December 10, 2003 cannot result in any liability for Markel.

The material facts not in dispute illustrate that Madonna asked Eldridge to transfer the coverage to the newly acquired vessel; that Eldridge faxed such a request to Markel; that Eldridge (and Cape Wide) was a marine insurance broker whose relationship with Markel consisted quite simply of nothing more than the mere enjoyment of access, of the ability to submit applications for coverage, with no ability or right to bind the marine insurer or to undertake any other act or form of representation that is an essential element of altering the familiar status of such a broker as the agent of the insured. *See, e.g., Jefferson Insurance Co. v. Roberts,* 349 F.Supp.2d 101 (D. Mass. 2004).

The material facts not in dispute illustrate that Markel never responded to Eldridge's request for transfer of coverage from Madonna's 2000 33 ft Pursuit to his 2000 30 ft Crosby Hawk, and that Eldridge failed to utilize either of what he freely admits were at least two (2) separate and distinct methods that were part of Cape Wide's standard office procedures for following up on all such requests for coverage or for transfers of coverage communicated to Markel.

The professional negligence of Defendant's own agent is manifest.

Finally, the material facts not in dispute demonstrate that Plaintiff is entitled to at least a partial summary judgment declaring that Markel's potential liability to Madonna can amount to nothing more than the $13,959.00 difference between the maximum insured value of the vessel that was to have been insured and the $270,000.00 figure paid to Madonna by Cape Wide in settlement of the Defendant's third party claim against the broker for the latter's professional negligence in having failed to obtain the desired coverage.

## II.

### ELDRIDGE AND CAPE WIDE INSURANCE AGENCY WERE ACTING AS AGENTS FOR THE DEFENDANT IN SEEKING TO OBTAIN MARINE INSURANCE COVERAGE

Even with Plaintiff admitting *__for purposes of this motion only__* that on June 24, 2003 Eldridge faxed a request to Markel asking for marine insurance coverage to be transferred to the 2000 30 ft Crosby Hawk, summary judgment must nonetheless be awarded to Markel. The material facts not in dispute, along with the familiar caselaw on the agency status of marine insurance brokers such as Eldridge, establish beyond doubt or cavil that the actions, the fault and/or the negligence of such persons cannot be imputed to or in any manner adversely impact a marine insurance company such as the Plaintiff.

Both the federal maritime law and the applicable law of Massachusetts are in fundamental agreement that an independent insurance agent or broker that seeks insurance for a private client or a member of the general public such as Madonna in the great nationwide or international marine insurance markets acts as the agent *__solely__* of the potential insured. *See, Jefferson Insurance Co. v. Roberts, supra*; *Jefferson Insurance Co.*

10

*v. Huggins*, 2000 A.M.C. 2357 (N.D. Tex. 2000); *La Reunion Francaise, S.A. v. Barron*, 1998 A.M.C. 2144 (C.D. Cal. 1998); *Underwriters at Lloyd's v. Giroire*, 1998 A.M.C. 2153 (S.D. Fla. 1998); *Dreiling v. Maciuszek*, 1992 A.M.C. 2482 (N.D. Il. 1991); *Washington Int'l Insurance Co. v. Mellone*, 1991 A.M.C. 996 (C.D. Cal. 1990).

*See,* Parks, *The Law & Practice of Marine Insurance and General Average*(1987) ch. V, at p. 138 *et seq*; Vol. 3, *Couch on Insurance*, (2d ed.) sec. 25:95; 43 AmJur2d *INSURANCE*, sec. 113 (1982).

Without exception, each and every case in this vast body of jurisprudence supports Plaintiff's contention in this summary judgment motion that Mr. Eldridge was acting as the agent of Robert Madonna in seeking to transfer the marine insurance coverage to the vessel that was destroyed in the December 10, 2003 marina fire. If Mr. Eldridge was indeed acting as Madonna's agent when he sent the fax of June 24, 2003 and thereafter neglected to take any further steps to ensure that Markel responded, failing as per his own testimony to follow his own critical office procedures for follow up after sending such faxes, then it is fundamental that such actions and misconduct cannot have any effect or impact upon the marine insurance company. Plaintiff Markel American Insurance Company must therefore be richly entitled to this Court's award of summary judgment.

Decisions right here in the Commonwealth of Massachusetts adhere closely and strictly to this familiar principle which is routinely enunciated in the federal admiralty caselaw, holding that a broker such as Eldridge or Cape Wide acts as the agent of the insured in seeking coverage. *See, Jefferson Insurance Co. v. Roberts, supra*; *Riley v.*

*Commercial Insurance Agency*, 1999 Mass.App.Div. 243 (1998); *Century Indemnity Co. v. Jameson*, 131 N.E.2d 767, 333 Mass. 503 (1956).

Addressing the issue generally, the United States Court of Appeals for the Ninth Circuit has observed:

> Marine insurance brokers are technically agents of the assured, even though they are compensated by commissions deducted from the underwriters' premiums, and they act as intermediaries both in placing the risk and handling claims.

*Lien Ho Hsing Steel Enterprise Co. v. Weihtag*, 738 F.2d 1455, at 1458 (9th Cir. 1984).

A recent decision from this very Court should amply illustrate the validity of Plaintiff's argument and the necessity for awarding summary judgment. In the case of *Jefferson Insurance Co. v. Roberts, supra*, a summary judgment was awarded to the marine insurance company despite the insured's assertions that a broker had assured him that a particular exclusion in the marine policy would not apply to his vessel. Reviewing the material facts not in dispute, Magistrate Judge Cohen noted that there was no evidence of actual authority; no evidence of implied authority; and no evidence of apparent authority. Without evidence showing some such authority, which would be necessary in order to support a departure from the established principle which holds that the broker acts as the agent of the insured and not of the marine insurer, any alleged assurance from the broker to the insured about the impact of policy language could not be in any manner binding on the marine insurance company and a summary judgment was therefore awarded to Jefferson Insurance Company based on a clear exclusion in the policy.

The case of *La Reunion Francaise, S.A. v. Barran, supra,* demonstrates that there must be some evidence of the existence of or the exercise of authority on the part of the broker in order to convert the latter into an agent of the marine insurance company. Failing a showing of such authority, the broker's acts are ascribed to the insured, and the broker's knowledge is the insured's knowledge. A summary judgment was granted to the marine insurer in the *Barran* case where the insured's broker was shown to have had knowledge of the existence of an exclusion in the policy for racing, and regarding the status of the broker the federal district court noted:

> Determining whether [the brokers] should be considered Barran's
> Brokers or La Reunion's agents depends upon the nature and
> Quality of their actions, rather than upon any titles they used to
> Characterize themselves [citation omitted]. In order to prove the
> Existence of an agency relationship...Barran would have to
> Show the exercise of either "actual" or "ostensible" authority
> On the part of [the brokers].

*La Reunion Francaise, S.A. v. Barran, supra,* at 2146-47.

In the case at bar there is no evidence of an agency agreement nor of any authority on the part of Eldridge of Cape Wide to act on behalf of Markel or to bind that marine insurance company. There is absolutely nothing in this record even remotely resembling either "actual" or "ostensible" authority being vested by Markel in Cape Wide. All that Eldridge and Cape Wide could do was precisely what the evidence shows was done in this particular instance – submit a request for some action by Markel and then see whether and/or what any response might be. The mere submission of a request on June 24, 2003 can not result in Madonna having any viable cause of action against Markel for

13

the marine insurance company having failed to issue the coverage sought by Eldridge, more especially where Eldridge has himself admitted that he was negligent in having failed to take the several types of further action called for under Cape Wide's official procedures which have been cited to this Court.

Because Madonna cannot demonstrate to this Court that Eldridge and Cape Wide were Markel's agents rather than his, summary judgment must be awarded to the marine insurance company on these facts.

## III.

### THE PLAINTIFF CANNOT BE LIABLE FOR ANY FAILURE BY THE DEFENDANT'S OWN AGENT TO OBTAIN MARINE INSURANCE COVERAGE

The agency status of William Eldridge and Cape Wide Insurance Agency having been firmly and unassailably established by the undisputed facts, it is axiomatic that Markel American Insurance Company cannot have any liability to the Defendant for the unfortunate destruction of the 2000 30 ft Crosby Hawk. Due to his own admitted fault and professional negligence in his duties as Madonna's agent, William Eldridge failed to obtain the coverage that Madonna had instructed him to obtain.

It is a familiar principle of marine insurance law and practice that a broker such as Eldridge is under a duty to use due diligence to obtain the type and the extent of the marine insurance coverage desired by his client, and the broker is equally obligated to advise his client promptly in the event that the coverage is either unavailable or he is for any reason unable to obtain the coverage. *Haeuber v. Can-Do, Inc.*, 666 F.2d 275, 1984 A.M.C. 1214 (5th Cir. 1982).

Where all a broker has succeeded in obtaining from a marine insurer is a mere "quote," with no actual "binder," there is no policy. *See, Grande v. St. Paul Fire & Marine Insurance Co.*, 365 F.Supp.2d 57, 2005 A.M.C. 1620 (D. Me. 2005). In the instant matter, Eldridge did not even succeed in eliciting a "quote" from Markel – he succeeded in eliciting absolutely nothing and through his own admitted negligence failed to make even the slightest effort to fulfill his legal duties as Madonna's broker.

An action by a vessel owner against his marine insurance broker for the latter's professional negligence is a recognized admiralty cause of action that falls within this Court's admiralty jurisdiction. *Illinois Constructors Corp. v. Morency & Assoc., Inc.*, 794 F.Supp. 841, 1993 A.M.C. 203 (N.D. Il. 1992). Disgruntled insureds such as Mr. Madonna sue their negligent brokers every day when the latter fail to obtain the type of coverage that was sought. Here, Mr. Madonna has indeed sued his broker and as stated, *supra*, and as discussed, *infra*, Madonna has in fact succeeded in persuading Cape Wide to pay him ninety-five percent (95%) of his damages!

*See also, Royal Insurance Company of America v. Cathy Daniels, Ltd.*, 684 F.Supp. 786 (S.D.N.Y. 1986) regarding the general duties owed by a marine insurance broker to the insured as its principal.

It was manifestly Eldridge's breach of his professional obligations to Madonna that was responsible for the said Defendant finding himself in the position of having no marine insurance coverage on the 2000 30 ft Crosby Hawk when that vessel was destroyed in the December 10, 2003 fire at Crosby Yacht Yard.

Eldridge knew that he could not bind Markel. Eldridge knew that the mere act of sending a fax asking for transfer of coverage could not, ***alone and standing by itself,***

have the desired effect of obtaining the desired coverage. With this critical awareness, it was precisely for such situations, where a marine insurance company failed *for whatever reason* to respond to such a faxed request that Eldridge and Cape Wide had placed into effect procedures for following up on exactly such communications to Markel and to the other sources of marine policies.

It should be noted that in the case of a marine insurer for which Eldridge and Cape did enjoy binding authority, that is where Eldridge and Cape Wide were authorized agents acting for the insurance company rather than for the insured, the mere sending of a fax would have been quite sufficient to create coverage.

The failure in this particular case by Madonna's broker to follow its own office procedures, a failure readily admitted by Eldridge, was responsible for the fact that the 2000 30 ft Crosby Hawk was uninsured when the fire occurred almost seven (7) months after Eldridge's request for a transfer of coverage.

As Eldridge himself admitted, all he had to do was follow his own procedures and pick up a telephone and call the Markel Underwriting Department. He would have done so had he received the type of reminder that his "tickler system" was intended to generate, or had he placed his June 24, 2003 fax into the folder that he set aside for just such reminder purposes. Markel had absolutely no obligation to respond to Eldridge's requests for coverage -- the duty of obtaining the coverage sought by Madonna was Eldridge's professional and legal burden.

The Court is respectfully reminded that during that time not only did Eldridge fail to utilize the two (2) distinct methods called for under Cape Wide's internal practices and procedures for ensuring that a request to Markel was pursued, he also failed to note that

16

Cape Wide had not received any request from Markel for the substantially increased premium payment that he readily admitted would certainly have followed hard on the heels of any transfer of coverage from a vessel having a hull value of only $142,100.00 to another vessel having a hull value of virtually double that figure, at $283,959.00.

Applying the entrenched principles of federal admiralty law set forth in the cases cited herein, this Court must award a summary judgment to Markel based on the negligence of Madonna's own broker having been responsible for the lack of coverage.

## IV.

### BECAUSE OF MADONNA'S AGREEMENT TO A SETTLEMENT WITH CAPE WIDE FOR $270,000.00, MARKEL'S LIABILITY TO THE DEFENDANT CANNOT EXCEED $13,959.00

Because Cape Wide has no separate or distinct right of action against Markel, because the Third Party Defendant can enjoy no greater right against Markel than Madonna would presently enjoy, it is axiomatic that the Plaintiff is at the very least entitled to this Court's judgment holding that no figure greater than $13,959.00 can remain in dispute in this litigation. Therefore, even if this Court were to deny the summary judgment that Markel maintains it is richly entitled to on the merits and based on the material facts not in dispute, any bench trial that might eventuate would concern nothing more than the figure by which the alleged value of the vessel to be insured exceeds the figure paid to Madonna in settlement of his claim.

Among the most familiar principles of law that most attorneys and courts must acknowledge is the one which holds that there can be but one recovery for one injury, regardless of the multiplicity of parties or the various theories which the injured party

might pursue. A party has a right to be made whole, but never (unless there is a claim for punitive damages) more than whole.

See, e.g., *Garshman Co., Ltd. v. General Electric Co.*, 176 F.3d 1 (1st Cir. 1999); *Temple v. Federal Deposit Insurance Corp.*, 988 F.2d 24 (5th Cir. 1993).

Mr. Madonna contends that he has been damaged to the extent of the destruction of a vessel alleged to have had a value of $283,959.00, and he has received from Cape Wide the sum of $270,000.00. That can only mean that the Defendant retains a Counterclaim against Markel in the sum of $13,959.00, or the difference between the vessel's value and the amount received from Cape Wide.

There is no claim asserted by Cape Wide against Markel, and since Cape Wide can enjoy no greater right than Madonna would have as against Markel, after the said Defendant's receipt of $270,000.00, this Court must rule that the remaining controversy involves the sum of $13,959.00.

**CONCLUSION**

**PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT
BASED UPON THE AGENCY STATUS OF THE BROKER**

Dated: December 30 , 2005
        Providence, Rhode Island

                                        MARKEL AMERICAN INSURANCE
                                        COMPANY
                                        By its Attorneys


                                        Lauren Motola-Davis, #638561
                                        Michael T. Farley, #640593
                                        MORRISON MAHONEY LLP
                                        One Providence Washington Plaza
                                        6th Floor
                                        Providence, RI 02903-7141
                                        (401) 331-4660


                                        GOLDMAN & HELLMAN
                                        Attorneys for Plaintiff
                                        315 S.E. 7th Street
                                        Suite 200
                                        Fort Lauderdale, FL 33301
                                        (954) 356-0460

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on ECF 12/30/05

19