UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
IN ADMIRALTY

No. 04-CV-10795-JGD

Markel American Insurance Company, )
    PLAINTIFF )
)
vs. )
)
Robert Madonna, )
    DEFENDANT/ )
    PLAINTIFF-IN-COUNTERCLAIM )
)
vs. )
)
Markel American Insurance Company )
and Cape Wide Insurance Agency, )
Inc., )
    DEFENDANTS-IN-COUNTERCLAIM )
)
AND )
)
Cape Wide Insurance Agency, Inc., )
    DEFENDANT-IN-COUNTERCLAIM/ )
      THIRD-PARTY PLAINTIFF )
)
vs. )
)
Crosby Yacht Yard, Inc., )
    THIRD-PARTY DEFENDANT )

BRIEF OF DEFENDANT/PLAINTIFF-IN-COUNTERCLAIM,
ROBERT MADONNA, IN SUPPORT OF HIS OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

Statement of Case:

This is a civil action initially brought by Markel American Insurance Company ("Markel") against Robert Madonna ("Madonna"). In this action, Markel is seeking a declaration as to whether a marine insurance policy issued by it provided coverage for a 2000 Crosby yacht owned by Madonna. Madonna has filed a Counterclaim against Markel, seeking $283,959.00 for the total value of the yacht which was destroyed due to a fire which occurred on December 11, 2003. The Counts against

Markel are for breach of contract, negligence, and breach of G. L. c. 93A. Madonna has brought Counts against Cape Wide Insurance Agency, Inc. ("Cape Wide") based on breach of contract and negligence, alleging that Cape Wide failed to make sure that the yacht was properly insured.

The discovery conducted in this case reflects that William Eldredge ("Eldredge"), the president of Cape Wide, handled Madonna's account. Commencing in approximately June, 2000, Madonna had coverage for two vessels through Cape Wide with Markel. The coverage was initially brokered by Cape Wide through XS Brokers Insurance Agency, Inc. in Quincy, Massachusetts, which was authorized to sell Markel's marine insurance. The evidence through Eldredge reflects that once any coverage was placed through XS Brokers Insurance Agency, Inc., Cape Wide could deal directly with Markel, placing coverage for new clients or making any amendments to existing insurance policies. (Defendant's statement of facts, Nos. 14 and 15.) Concerning that business practice, Markel instructed Cape Wide that any renewals or amendments to insurance policies were to be done by direct facsimile communication from Cape Wide to Markel. (Defendant's statement of facts, No. 15.) The fax number to which submissions were to be made, as directed by Markel, was 262-548-3288 at Markel's office in Waukesha, Wisconsin. (Defendant's statement of facts, No. 18.) Eldredge had used that procedure to place new coverage or amend existing policies prior to the incidents

involved in this case. (Defendant's statement of facts, No. 4.) There is evidence through Eldredge that on two or three occasions prior to June, 2003, when Cape Wide was seeking changes in existing coverage, there were delays of up to three months or more before Markel sent out endorsements confirming the requested changes in coverage. (Defendant's statement of facts, Nos. 5 and 11.)

In this case, Madonna insured two yachts on one policy, RD0000503 (RD503), with Markel through Cape Wide commencing in or about June, 2000. That policy was renewed annually through 2003. In June, 2003, Madonna purchased two new vessels and sold his two originally insured vessels. Madonna requested Cape Wide (Eldredge) to change the insurance coverage to identify the two new vessels. In accordance with Markel's procedure, Eldredge faxed the appropriate documentation to Markel on two occasions (June 16 and June 24, 2003) to amend the coverage on policy No. RD503 to identify the two newly purchased vessels. (Defendant's statement of facts, Nos. 6, 8, and 9.) The vessel involved in this claim is a 29-foot, 2000 Crosby Hawk, which Madonna purchased for $283,959.00 on or about June 24, 2003. Cape Wide faxed the documentation for that boat to Markel on June 24, 2003, to replace coverage on another vessel which Madonna had owned. The documentation to amend the coverage was sent by facsimile to Markel's dedicated facsimile machine with telephone number 262-548-3288. (Defendant's statement of facts, No. 9.) Cape Wide's telephone

3

records reflect that the said facsimile message went through to that number. (Defendant's statement of facts, No. 9.)

On or about December 10/11, 2003, there was a fire at Crosby Yacht Yard, Inc. in Osterville, Massachusetts, at which time many vessels, including Madonna's 2000 Crosby Hawk, were totally destroyed. Madonna immediately notified Cape Wide of the loss, and Cape Wide immediately faxed the ACORD claim form to Markel. However, Madonna mistakenly identified the damaged vessel as a 2003 Tiara, and Cape Wide so identified said vessel in the initial report of loss to Markel. (Defendant's statement of facts, No. 10.) On December 12, 2003, Markel responded that it had no record of coverage for said vessel; and, accordingly, no investigation was performed by Markel regarding the fire, and no payment was made. Subsequent to the filing of the initial claim, it was learned that the vessel destroyed in the fire was the 2000 Crosby Hawk vessel. Markel declined coverage on the Crosby as it denied having record that it insured that vessel.

As of December 11, 2003, neither Cape Wide nor Madonna had received confirmation from Markel of the requested amendment, sent by two faxes in June, 2003, to add the two new vessels to policy No. RD503. Pursuant to its business procedures with Markel, on June 16, 2003, Cape Wide faxed a cover sheet with supporting documentation to Markel to change coverage from a 1996 36' Tiara vessel to a 2003 41' Tiara vessel. (Defendant's statement of facts, No. 8.) On June 24,

2003, Cape Wide faxed a coverage sheet with supporting documentation to Markel changing coverage from a Pursuit vessel to a 29' Crosby Hawk vessel. (Defendant's statement of facts, No. 9.) As of June 24, 2003, the insurance premiums for Markel's coverage on the two original vessels on policy No. RD503 had been paid in full by Madonna.

Cape Wide has impleaded Crosby Yacht Yard, Inc. as a third-party defendant, seeking contribution or indemnification for said loss due to the negligence/breach of duty of Crosby Yacht Yard, Inc. to Robert Madonna in causing the fire which damaged Madonna's yacht. That issue is not a part of the motion for summary judgment.

The value of the vessel at issue in this case is $283,959.00, its purchase price, and it is the amount of coverage sought by Madonna and the amount of coverage sought by Cape Wide from Markel.

Argument:

I. The Plaintiff Is Not Entitled to Summary Judgment as There Is a Genuine Issue of Material Fact To Be Determined.

The business practices and procedures set in place by Markel for the placement or amendment of insurance coverage creates an inference and issue of fact that Cape Wide, in its dealings with Markel on behalf of Madonna, was acting as an agent for Markel.

The question of whether a broker is the agent for the insured or the insurer is ordinarily one of fact for determination by the jury when there is conflicting evidence.

Couch On Insurance 3D, Vol. 3, sec. 45:9, p. 45-22, 23; Insurance Co. of North America v. Midwest Transfer Co., 178 F.2d 191 (7 Cir. Ill. 1949). It is only where the evidence clearly shows that the agent is the agent of the insured does that issue become a matter of law. Couch On Insurance 3D, Vol. 3, sec. 45:9, p. 45-23; International Paper Co. v. General Fire Insurance Co., 263 F. 363 (2d Cir. N.Y. 1920).

An independent agent/broker may be converted to be an agent for the insurer where there has been some action on the part of the insurer, or the existence of some facts by which the independent agent/broker's authority to represent the insurer may be fairly inferred. Couch On Insurance 3D, Vol. 3, sec. 45:5, p. 45-14; Travelers Indem. Co. v. National Indem. Co. 292 F.2d 214 (8th Cir. Minn. 1961). While the general rule is that an insurance broker is one who acts on behalf of the insured and not on behalf of the carrier, there are two exceptions to that rule, the first being custom and usage and the second being the course of dealings between a broker and an insurance company. Couch On Insurance 3D, Vol. 3, sec. 45:5, p. 45-15; American Fidelity Fire Ins. Co. v. Johnson 177 So.2d 679 (Fla. Dist. Ct. App. 1st Dist 1965), cert. denied, 183 So.2d 835 (Fla. 1966). In that case, there was an arrangement between a broker and an insurer's general agent regarding renewals, including agreement that an application would be deemed accepted as of the date it was postmarked for delivery from the broker to the general agent

if accompanied by proper premium; thus, the broker was the agent of the insurer with respect to policy renewals. See also, Knight v. Merchant & Mfrs. Ins. Co., 239 Mo.App. 107, 188 S.W.2d 77 (1945).

The facts in this case reflect that after its initial application for insurance through XS Brokers Insurance Agency, Inc. as Markel's "marketing general agent," Cape Wide could place insurance and/or amend existing insurance coverage by sending the application or requested change in coverage directly to Markel at a specific fax telephone number identified by Markel to Cape Wide. (Defendant's statement of facts, No. 4.) There is evidence through the testimony of Eldredge that during the period of June, 2000, through June, 2003, Cape Wide had placed approximately 10 insurance policies with Markel. (Defendant's statement of facts, No. 3.) During that time, Eldredge experienced delays of up to three months or more in receiving endorsements from Markel confirming the requested changes in the existing policies. (Defendant's statement of facts, Nos. 5 and 11.)

The evidence from the testimony of Thomas Conroy, the designee of Markel, reflects that the fax number 262-548-3288 was in existence in 2003. (Defendant's statement of facts, No. 15.) Said fax number was for Markel's customer service department, not its underwriting department. (Defendant's statement of facts, No. 18.) The customer service department was adjacent to the underwriting department, approximately 20

7

steps away. In 2003, the fax machine for said fax number was located in a hallway. (Defendant's statement of facts, Nos. 20 and 25.) In 2003, Markel had no specific employee designated to handle incoming faxes in the customer service department. (Defendant's statement of facts, No. 24.) That procedure has changed and Markel now has an employee designated to accept incoming faxes to that fax machine and deliver the faxed documents to the proper department. (Defendant's statement of facts, No. 24.) The evidence through the testimony of William Eldredge on behalf of Cape Wide, the testimony of Thomas Conroy on behalf of Markel, and communication from Markel's customer service department received by Eldredge in June of 2000 confirms that the fax number at Markel designated for Cape Wide to use was 262-354-3288. (Defendant's statement of facts, Nos. 8, 20, and 26.)

The telephone records for Cape Wide reflect that on June 16, 2003, and June 24, 2003, faxes were sent to Markel's designated fax machine and that the time for each fax transmission is consistent with multiple pages being received at that fax machine. (Defendant's statement of facts, Nos. 8 and 9.)

Massachusetts case law holds that "Apparent authority is the authority resulting from the conduct of the principal which causes a third party reasonably to believe a person has authority to make representation or act as an agent for

8

an insurer." Hudson v. Mass. Property Ins. Underwriting Association, 386 Mass. 450, 436 N.E. 2d 155, 159 (1982). The facts in this case reflect that it was Markel which set the procedure that Cape Wide was to use to place or amend coverage. Thus, a reasonable conclusion of fact can be made by a jury that there was an agency relationship between Cape Wide and Markel in this case. Jefferson Insurance Company v. Roberts, 349 F.Supp.2d 101, 108 (D. Mass. 2004).

While the findings of the Court in the Jefferson and Hudson cases were that the agent/broker was not the agent of the insurer, the facts in those cases reflect that there were no procedures or course of dealings between the agent/broker and the insurance company comparable to the facts in this case. In Hobbs Brook Agency, Inc. v. North River Ins. Co., 7 Mass.App.Ct. 885, 386 N.E.2d 1315 (1979), the Appeals Court, in interpreting the language of New York insurance law and the law of apparent authority, found under the evidence of that case that an independent broker can act as an agent for an insurance company.

II. Defendant/Plaintiff-in-Counterclaim, Madonna, Is a Third-party Beneficiary in the Action of Cape Wide.

The right of a third-party to enforce a contractual matter in its favor where that party is an intended beneficiary of the contract is recognized under Massachusetts law. Markel Service Ins. Agency, Inc. v. Tifco, Inc., 403 Mass. 143, 148-151 (1986). The facts in this case reflect that the

defendant/plaintiff-in-Counterclaim, Robert Madonna, is a third-party beneficiary to a finding that the course of conduct between Cape Wide and Markel made Cape Wide an agent of Markel in the amending of the insurance coverage at issue and that the defendant/plaintiff-in-Counterclaim, Robert Madonna, is entitled to be indemnified by Markel for the loss of his vessel. Flattery v. Gregory, 397 Mass. 143, 148-151 (1986).

III. The Defendant/Plaintiff-in-Counterclaim, Madonna, Is Entitled to Full Compensation from the Plaintiff, Markel.

The defendant/plaintiff-in-Counterclaim, Madonna, filed a Counterclaim against the defendant-in-Counterclaim Cape Wide. During the pendency of this case, Madonna resolved his claim against Cape Wide for $270,000.00. Reference to the Settlement Agreement is contained in the defendant's statement of facts No. 27, and a copy of same is attached thereto. In that agreement, Madonna assigned to Cape Wide "all of his claims of whatever nature or kind against Crosby Yacht Yard, Inc. or any other party, on account of the loss of the Crosby, including but not limited to all his rights, claims, and defenses against Markel asserted in the Civil Litigation." Whereby, the defendant/plaintiff-in-Counterclaim, Madonna, contends that the full monetary value of the damage to the Crosby vessel of $283,959.00 is the appropriate monetary damage in this case.

Conclusion:

WHEREFORE, for the foregoing reasons, the defendant/plaintiff-in-counterclaim, Robert Madonna, requests that this Honorable Court deny the plaintiff's motion for summary judgment.

Respectfully submitted,

FOLAN & McGLONE, P.C.

By: _____
John F. Folan
B.B.O. No. 173300
Post Office Box 2095
New Bedford, Massachusetts 02741-2095

Tel. No. (508) 992-9800

Dated: February 1, 2006

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail, postage prepaid, on February 1, 2006.

_____
John F. Folan
Folan & McGlone, P.C.