UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
IN ADMIRALTY

MARKEL AMERICAN INSURANCE
COMPANY,

    Plaintiff,

vs.                                          CASE NO. 04- CIV-10795-MLW

ROBERT MADONNA,

    Defendant/Counter-Plaintiff,

vs.

MARKEL AMERICAN INSURANCE
COMPANY and CAPE WIDE INSURANCE
AGENCY, INC.,

    Counter-Defendants.
_____/

PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, MARKEL AMERICAN INSURANCE COMPANY, by and through its undersigned attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of United States District Court for the District of Massachusetts, files this its Reply Memorandum of Law in support of its Motion for Summary Judgment, and further thereto would state as follows:

1. It is respectfully submitted that the Plaintiff's entitlement to an award of summary judgment is made utterly manifest by a review of **_both_** what the Defendant contends and what he does not contend in his responsive pleadings.

2. Review of the Defendant's response to the Plaintiff's summary judgment motion illustrates rather clearly that Madonna is **_not_** denying that the negligence of Cape

1

Wide (presented in rather exhaustive fashion in Plaintiff's Statement of Undisputed Material Facts) was the cause of his loss. Indeed, Madonna is acknowledging that Mr. Eldridge's failure to pursue his own internal procedures for ensuring coverage with Markel was the reason that he found himself without such coverage in the wake of the fire at the marina that destroyed his vessel. Madonna appears quite content to accept that Mr. Eldridge was negligent and that his negligence was the cause of his loss.

3. It is clear that Madonna is **_not_** arguing that some independent act committed by Markel was the cause of his finding himself uninsured. Nowhere to be found in Madonna's pleadings is any contention or allegation that Markel had some independent duty to issue a policy of marine insurance despite the admitted fault or neglect of Mr. Eldridge. Nowhere to be found in Madonna's pleadings is any contention of some legal duty imposed upon the marine insurer requiring a positive response to submissions from a broker charged with the responsibility for obtaining, transferring or enlarging marine insurance coverage on behalf of a vessel owner. This is perfectly proper, as the caselaw contains not a single authority holding that such a duty to respond on the part of a marine insurer exists.

4. It is equally clear that Madonna is **_not_** denying that he has accepted the sum of $270,000.00 from Cape Wide Insurance Agency in settlement for the said damages.

5. Rather, review of the Defendant's response to the Plaintiff's summary judgment motion indicates that Madonna's opposition is based on two (2) contentions.

6. First, Madonna contends that some dispute remains concerning the agency status of Cape Wide Insurance Agency. Madonna contends that if there is

evidence showing that Cape Wide was vested with "ostensible or apparent authority" to act on behalf of Markel, then this Court ought to retain jurisdiction over Markel American Insurance Company for failure to accept coverage and failure to pay for the loss of the 2000 30 ft Crosby Hawk. Madonna is arguing that because of this alleged dispute as to material facts, he should be allowed to maintain his claim for full coverage from Markel.

7. Second, it is equally clear that Madonna is contending that he remains entitled to an award of $283,900.00 from Markel, despite admitting that he has already received settlement funds totaling $270,000.00 from a party that he contends acted as an agent for the Plaintiff.

8. Let it be understood that Plaintiff continues to accept for purposes of this motion Mr. Eldridge's assertion that he sent the faxes of June 16, 2003 and June 24, 2003. Markel accepts for purposes of this motion that these faxes were received at the Plaintiff's offices in Pewaukee, Wisconsin. Markel further accepts for purposes of this motion each and every one of the "facts" set forth in the twenty-seven (27) paragraphs of Madonna's Statement of Facts offered in opposition to the pending summary judgment motion.

9. Careful consideration of the law and the facts in this case must convince the Court that Defendant's claims have absolutely no merit, and that Plaintiff's motion must be granted.

10. The undisputed material facts illustrate that William Eldridge and Cape Wide Insurance Agency were the most common, garden variety marine insurance brokers, acting at all times as agents for Mr. Madonna and not for Markel American

Insurance Company. Neither Eldridge nor his company has authority to act for or to bind Markel, and there was no written or formal agreement of any kind existing between the broker and the marine insurer pursuant to which the former would have been authorized to act on behalf of the latter. The caselaw makes it manifest that some such authority must be demonstrated in order justify a departure form the rule which holds that a broker such as Cape Wide is the agent of the insured, with its acts and omissions attributable to the insured and not to the marine insurer.

11. Madonna's opposition to Plaintiff's summary judgment motion appears to concede the latter point, while arguing that a showing of "ostensible or apparent authority" sufficient to deny summary judgment should be inferred from the utterly innocuous fact that Markel allowed Cape Wide to send faxes directly to Markel's Underwriting Department in Pewaukee, Wisconsin, by-passing an entity (which, unlike Cape Wide, was an authorized agent!) with which it has previously been required to deal in order to obtain marine policies from Markel. Madonna also argues that other alleged instances in which Markel failed to respond to faxes from Cape Wide should be interpreted as vesting that broker with the requisite element of "ostensible authority" necessary to defeat Plaintiff's motion.

12. Madonna's argument must be unavailing, however, in that none of the foregoing can alter the essential relationships which support summary judgment. There is absolutely nothing unusual or in any way out of the ordinary for a broker, *any broker*, to send faxes directly to a marine insurance company or market, such as Markel, which offers policies available to be purchased on behalf of members of the general public. There is no case in the abundant jurisprudence cited in Plaintiff's original Memorandum

4

of Law in support of summary judgment which holds that such direct contact or communication between a broker and a marine insurer can alter or amend the familiar relationships in which such a broker acts as the agent of the insured.

13. In fact, one of the cases which Defendant cites in his "brief" is itself a graphic depiction of the merits of Plaintiff's position, and should serve as a demonstration of Markel's entitlement to summary judgment. In the case of *American Fidelity Fire Insurance Co. v. Johnson*, 177 So.2d 679 (Fla. 1st DCA 1965), *cert. denied*, 183 So.2d 835 (Fla. 1966), cited at p. 6 of Defendant's brief, the agreement that was shown to have existed between the broker and the insurer provided for automatic acceptance of application submitted on behalf of prospective insureds! The bestowal of such automatic, binding authority is precisely the type of activity which converts a broker from the agent of the insured to the agent of the insurer, and it is also precisely the type of activity which is conspicuous by its absence in the instant matter, where the evidence demonstrates that Markel exercised great care to avoid the existence of a situation where Cape Wide could enjoy any such authority.

14. As in every other case in the jurisprudence, already cited by Plaintiff, in which courts have ruled that a broker acted as the agent of this insured, all Cape Wide could do was send faxes to Markel and ask for some indication of the terms or of the willingness of the marine insurance company to issue a policy. There must be evidence of some actions by the broker, some exercise of authority on behalf of the marine insurer, in order for this Court to determine that Cape Wide was anything other than Madonna's agent. *See, Washington Int'l Insurance Co. v. Mellone*, 1991 A.M.C. 996 (C.D. Cal. 1990), where the court stated:

> [The insured] contends that the conduct of [the broker] and plaintiff supports the theory of agency because [the broker] interacted with third parties at the request of plaintiff, the application for insurance listed [the broker] as agent, [the broker] receives its remuneration from plaintiff, and [the broker] has responsibility to make sure all Survey Recommendations were complete. Defendant cites no authority, however, which indicates that such conduct warrants an inference of agency relationship between an insurance broker and the insurer in the absence of an agency agreement.

*Id.*, at 999.

15.   *See also, Certain Underwriters at Lloyd's v. Giroire*, 1998 A.M.C. 2153 (S.D. Fla. 1998) where again a federal district rejected the all too predictable and self-serving contention that the broker selected by the insured should be deemed an agent of the marine insurer, stating:

> The Court disagrees. [The insured] approached [the broker], who he has known for many years, and asked him to obtain insurance. [The broker] then contacted… the Lloyd's underwriting agent to explore whether he could obtain coverage. [The broker] had no contractual relationship with Lloyd's and no authority to bind coverage on behalf of Lloyd's.

*Id.*, at 2161.

16.   Moreover, the evidence which Madonna cites as supporting an inference of the existence of "apparent or ostensible authority" fails to satisfy the very definition of such authority as required under the Massachusetts state authorities cited in Defendant's own brief. As Defendant notes, Massachusetts caselaw requires that the conduct alleged to give rise to "apparent or ostensible authority" must be something which causes "a third

party to believe a person has authority" to act as an agent for the insurer. *Hudson v. Mass. Property Insurance Underwriting Assoc.*, 436 N.E.2d 155, at 159 (Mass. 1982). Conspicuous by its absence in the instant matter is any evidence showing that Madonna was ever led to believe that Cape Wide was anything other than his broker. Conspicuous by its absence in the instant matter is any evidence from which this Court might deduce that Robert Madonna could have been misled into supposing that William Eldridge or Cape Wide Insurance Agency was anything other than the independent insurance broker that the evidence in this case so graphically illustrates.

17. In order for the Defendant's argument regarding "apparent or ostensible authority" to succeed, there must be a showing not that this Court can or should infer that Cape Wide acted as an agent for Markel. Rather, Madonna's burden is to show that **_he_** was aware of something, that he was made aware of some facts, which led him to "reasonably believe [that Eldridge] has authority to make representation or act as an agent for an insurer." *Id.*

18. There is no evidence in the record showing that Madonna was aware of anything that Eldridge did with respect to Markel, or for that matter with respect to any other insurer with which the said broker might have enjoyed dealing. There is no evidence in the record showing that Madonna knew how or with what frequency Cape Wide communicated with Markel. There is no evidence in the record showing that Madonna had any knowledge of the existence of the undated and unsigned letter, lacking even an addressee, which Mr. Eldridge asserts in his January 31, 2006 affidavit was received back on June 22, 2000, perhaps from Markel and perhaps from XS Brokers Insurance Agency. There is nothing to allow this Court to reach the inference that

Madonna could have been led to believe, by something that Markel did, that Eldridge and Cape Wide acted as agents of Markel.

19. On this record, all Madonna ever knew was that he went to Cape Wide to obtain marine insurance coverage for his vessels, each time he acquired a new one, and the predictable arguments advanced by his new legal representatives concerning the broker's "apparent or ostensible authority" to act on behalf of Markel must fail.

20. *See, Jefferson Insurance Co. v. Roberts,* 349 F.Supp.2d 101 (D. Mass. 2004) where this Court stated that "apparent authority" results from "*conduct by the principal*" (italics in original) which must cause "a third person reasonably to believe that a particular person has authority to make representations as his agent." *Id.*, at 108. In the absence of "one single solitary fact suggesting that the *principal's* conduct caused [the insured] to believe that [his broker] had authority to bind Jefferson" *id.*, the Court ruled that the defendant/insured "simply cannot make out a case of apparent authority." *Id.*.

21. Similarly, in the absence of any evidence showing that Madonna was aware of anything from which he might reasonably cause or allow him to believe that Cape Wide had authority to act or to bind Markel, any argument that the said broker could be deemed an agent of the Plaintiff must be rejected.

22. The record before this Court demonstrates that the acts and omissions of William Eldridge were responsible for Madonna's vessel being uninsured at the time of the December 10, 2003 marina fire. Even assuming that Markel received and then lost the faxes of June 16, 2003 and June 24, 2003 by which Eldridge (allegedly) sought to transfer coverage to the vessels newly acquired by Madonna, there has been no showing of the existence of any legal duty by Markel the breach of which is a cause of damage to

Madonna. There is no case which holds that a marine insurer such as Markel has any duty to respond to request for coverage or for transfer of coverage. There is no case which holds that a marine insurer such as Markel has any duty to issue a policy of marine insurance on the mere receipt of a request via fax for a quote or even for a transfer of existing coverage. Rather, the cases hold that the duty, and the potential liability for failure to obtain coverage or for failure to follow up to ensure action from a marine insurer such as Markel remains with the insured's own broker. *See, Haeuber v. Can-Do, Inc.*, 666 F.2d 275, 1984 A.M.C. 1214 (5th Cir. 1982).

23. Indeed, as stated, *supra*, Madonna is **not** even arguing that some independent act committed by Markel was the cause of his finding himself uninsured. What he is arguing, indeed all he is arguing, is that Eldridge and Cape Wide should be viewed as Markel's agent, and that the fault or neglect of Eldridge and Cape Wide should be attributed to Markel.

24. The record before this Court does not support such a finding, which would require some competent evidence showing that Madonna himself was led to believe that such a situation at variance with the standard legal status of these parties was extant.

25. It is somewhat difficult to even comprehend the thrust or the basis of Madonna's argument in opposition to the Plaintiff's demand for a ruling that under no circumstances can Markel's remaining liability exceed $13,959.00. Madonna is arguing that the sole reason for denying Plaintiff's summary judgment motion is its contention that Cape Wide should be deemed an agent of Markel. The Defendant has also admitted that his damages are restricted to the $283,959.00 value of the lost vessel, and that a

settlement was reached calling for Markel's putative "agent" to pay him the sum of $270,000.00.

26.  On that basis, it is clear, indeed it is beyond rational argument, that Markel's liability can under no set of circumstances exceed the difference between what would have been the value of the vessel and the amount of the settlement. Since the settlement was reached with a party said by Madonna to be an agent of the Plaintiff, it must be asked on what conceivable basis Madonna can now seek damages beyond $13,959.00? The cases already cited in Plaintiff's Memorandum of Law in support of summary judgment illustrate the familiar proposition that there can be but one recovery in a case such as the instant one. In opposing Plaintiff's request for a ruling that under no circumstances can Markel's remaining liability to Madonna exceed the difference between the insured value of the vessel and the amount paid in settlement by the Plaintiff's alleged "agent," the newly appointed attorneys for the Defendant would certainly seem to have run afoul of this well established legal principle.

27.  In the brief filed by Defendant, his new legal representatives state that whatever claims Madonna might have retained in the wake of the $270,000.00 settlement agreement have now been assigned to Cape Wide. Yet the question remains, what is the value of whatever it is that Madonna retains as against Markel, after having accepted $270,000.00 from a party that he is contending acted as Markel's agent. Adding to the confusion is the fact that in that the instant matter no claim has ever been asserted against Markel by Cape Wide. In the matter before this Court, despite the substitution of the attorneys who had previously been acting for Cape Wide, it must remain clear that it is Madonna and Madonna only who is claiming a right of recovery against Markel's policy

of marine insurance. There is absolutely nothing in Madonna's responsive pleadings from which it can be deduced on exactly what basis the named insured can legitimately continue to assert a right to the full policy limits of $283,959.

28.   It is therefore respectfully submitted that the caselaw and the facts amply support Plaintiff's position, and that summary judgment is proper under these circumstances.


Dated:      February 28, 2006
            Boston, Massachusetts


                                        MORRISON MAHONEY LLP
                                        Attorneys for Plaintiff
                                        One Providence Washington Plaza
                                        6th Floor
                                        Providence, RI 02903-7141
                                        (401) 331-4660


                                        By: _____
                                            Lauren Motola-Davis, #638561
                                            Michael T. Farley, #640593


                                        GOLDMAN & HELLMAN
                                        Attorneys for Plaintiff
                                        315 S.E. 7th Street
                                        Suite 200
                                        Fort Lauderdale, FL 33301
                                        (954) 356-0460