UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARKEL AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-10795-JGD |
| ROBERT MADONNA, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| ROBERT MADONNA, | ) ) | |
| Plaintiff in Counterclaim, | ) ) | |
| v. | ) ) | |
| MARKEL AMERICAN INSURANCE COMPANY and CAPE WIDE INSURANCE AGENCY, INC., | ) ) ) ) | |
| Defendants in Counterclaim. | ) | |

**MEMORANDUM OF DECISION AND ORDER**
**ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

June 30, 2006

DEIN, U.S.M.J.

**I.  INTRODUCTION**

The plaintiff, Markel American Insurance Company ("Markel"), is in the business

of writing and issuing policies of marine insurance.  The defendant, Robert Madonna

("Mr. Madonna"), was the owner of a 2000 30 ft Crosby Hawk (the "vessel") which was

destroyed as a result of a fire at the Crosby Yacht Yard in Osterville, Massachusetts on

December 10, 2003.  The defendant-in-counterclaim, Cape Wide Insurance Agency, Inc.

("Cape Wide"), is an insurance broker and was responsible for obtaining insurance for the vessel. Although Cape Wide notified Markel of a desire to insure the vessel, no coverage was ever obtained.

Markel brought this action under Fed. R. Civ. P. 9(h) seeking a declaration that it did not issue any policy of marine insurance that provided coverage for the loss of the vessel. In response, Mr. Madonna brought claims against Markel and Cape Wide seeking to recover $283,959.00, the value of the vessel.[1] Mr. Madonna settled his dispute with Cape Wide and received $270,000.00. Cape Wide, as assignee of Mr. Madonna, is continuing to claim the full value of the vessel in the suit against Markel.

This matter is before the court on Markel's motion for summary judgment on its claim for declaratory judgment and on the counterclaims against it. (Docket No. 33). For the reasons detailed herein, this court finds that Cape Wide did not have actual or apparent authority to bind Markel, and that the undisputed facts establish that at all times Cape Wide was acting as Mr. Madonna's agent. Moreover, this court finds that Mr. Madonna has no claim against Markel arising out of his alleged status as a third-party beneficiary. Therefore, Markel's motion for summary judgment is ALLOWED.

---

[1] Mr. Madonna has asserted the following counterclaims against Markel: Count I - for payment under the policy of insurance; Count II - negligence for failing to issue the insurance; and Count V - violation of Mass. Gen. Laws ch. 93A.

## II. <u>STATEMENT OF FACTS</u>[2]

The following facts are undisputed unless otherwise indicated.

### <u>Coverage of Mr. Madonna's Vessels</u>

Mr. Madonna originally insured two vessels with Markel, and used Cape Wide as his broker in both instances. (PF ¶ 6). One vessel was a 1996 41 ft Tiara yacht with an insured value of $379,000.00, and the other was a 2000 30 ft Pursuit power vessel with an insured value of $142,100.00. (PF ¶¶ 7, 8). Both vessels were covered under Markel's Policy No. RD0000503. (PF ¶ 9). To obtain such coverage, Mr. Madonna had contacted Cape Wide, an insurance broker, which in turn, had contacted XS Brokers Insurance Agency, Inc. ("XS Brokers"). XS Brokers was a "marketing general agent" of Markel and had a contract to sell Markel's insurance products. (See DF ¶¶ 13-14; Brief of Defendant/Plaintiff-in-Counterclaim, Robert Madonna ("Madonna Br.") (Docket No. 38) at 2).

In or around June, 2003, Mr. Madonna sold his two vessels and purchased a 2003 42 ft Tiara and a 2000 30 ft Crosby Hawk. (Counterclaim ¶ 6; PF ¶ 13). As alleged in Mr. Madonna's Counterclaim, "[i]n connection with the purchases of the Tiara and the

---

[2] Unless otherwise indicated, the facts are derived from "Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment" ("PF") (Docket No. 35); the "Response of Defendant/Plaintiff-in-Counterclaim, Robert Madonna, to Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment" ("DR") (Docket No. 40); and the "Statement of Facts of Defendant/Plaintiff-in-Counterclaim, Robert Madonna" ("DF") (Docket No. 39), which facts were admitted in "Plaintiff's Reply Memorandum of Law in Support of Motion for Summary Judgment" ("Pl. Reply") (Docket No. 41) at ¶ 8. The deposition of William Eldredge ("Eldredge Dep.") was filed separately as Docket No. 36.

Crosby, Madonna's insurance agent, Cape Wide, was asked to undertake such steps as required so that the Tiara and Crosby were properly insured." (Counterclaim ¶ 7; PF ¶ 14). Since Cape Wide had placed insurance with Markel before through XS Brokers, it was now permitted to contact Markel directly. (Madonna Br. at 2). Therefore, on June 16, 2003, Cape Wide sent a fax with related documents to Markel requesting that coverage be transferred from the 1996 Tiara 41 ft yacht (with an insured value of $379,000.00) to the 2003 Tiara 42 ft yacht (worth $697,000.00). (PF ¶¶ 7, 22, 47 & Ex. G). On June 24, 2003, Cape Wide sent a fax with related documents to Markel requesting that coverage for the 2000 30 ft Pursuit (insured for $142,100.00) be transferred to the 2000 29 ft Crosby Hawk (valued at $283,959.00). (PF ¶¶ 8, 22 & Ex. H).[3] Under the parties' usual practice, Cape Wide would complete an application and then fax it to Markel, asking for a quote. (PF ¶ 35). Markel would respond with a quote and, if Cape Wide's client was satisfied with the quote, Cape Wide would ask Markel to actually bind coverage and issue a policy. (Id.). Cape Wide did not have actual authority to bind Markel. (PF ¶ 36).

In this case, although Markel, for summary judgment purposes only, admits receiving the faxes, the undisputed facts establish that Markel never responded to these requests, never issued any insurance for these vessels, and never increased the premiums

---

[3] Markel has admitted that these faxes were sent for summary judgment purposes only. While Cape Wide's phone bills support the contention that the faxes were sent, Markel has no record of ever receiving the faxes.

to cover the increased value of the vessels.  (PF ¶ 29, 39-40, 46).  Moreover, it is undisputed that Cape Wide did not follow up with Markel and did not employ any of its internal "tickler" or reminder systems to insure that Markel had responded to the request for either vessel.  (PF ¶¶ 40-45, 47).

There was a fire at the Crosby Yacht Yard on December 10, 2003.  On December 11, 2003, Cape Wide sent a fax to Markel notifying Markel, incorrectly, that Mr. Madonna's 2003 Tiara had been totaled in the fire.  (PF Ex. C).  Apparently recognizing that the insurance coverage had not been changed to cover this vessel, Cape Wide wrote:

> Attached you will find what was originally faxed to Markel on 6/16/03 requesting coverage to be transferred from the 96 Tiara 41' to the new 03 Tiara 41 effective 6/16/03.  Mr. Madonna just called to report a claim on the 03 Tiara which was totaled in a fire at Crosby Yacht Yard Inc in Osterville, MA on 12/10/03 at 9:00 PM.  Please correct the current policy & process the claim accordingly.  If any questions, don't hesitate to give me a call.  The marine survey was never faxed to you but is attached to this fax.

(Id.).  Markel conducted an internal investigation and was unable to find any record of having received the referenced fax.  (PF ¶ 15).  By letter dated December 12, 2003, Markel notified Mr. Madonna directly, with a copy to Cape Wide, that according to the company's files, it was insuring a 2000 Pursuit and a 1996 Tiara, and had no record of insuring a 2003 Tiara.  (PF ¶ 16-17, Ex. D).

By letter dated April 6, 2004 Cape Wide's Errors & Omissions Insurer informed Markel that there had been a mistake, and that the claim was not for the 2003 Tiara yacht but, rather, was for a 2000 Crosby Hawk.  (PF ¶ 18-21, Ex. F).  Cape Wide also directed

Markel to a fax dated June 24, 2003 by which Cape Wide had allegedly requested coverage for the new vessel. (PF Ex. F). Markel again undertook an internal investigation and found no record of having received the fax. (PF ¶ 24). Again, it is undisputed that Markel never responded to the fax of June 24th and did not place any insurance on the 2000 Crosby Hawk yacht that was destroyed by fire. (PF¶ 47).

Mr. Madonna brought this action against Markel and Cape Wide. He settled with Cape Wide, which paid him $270,000. (PF ¶ 48). Cape Wide took an assignment of Mr. Madonna's rights against Markel as part of the settlement, and is pursuing Mr. Madonna's claims in this litigation. (DF ¶ 27). As "Mr. Madonna," Cape Wide contends that it can recover the full amount of the value of the vessel from Markel. Cape Wide has no direct claims against Markel.

<u>The Relationship Between Cape Wide and Markel</u>

It is undisputed that Cape Wide did not have a contractual relationship with Markel, and did not have actual authority to bind Markel. (PF ¶ 36; PR ¶36 (Madonna "admits that Cape Wide did not have authority from Markel to 'actually' bind coverage for it. Madonna states that based upon custom and prior dealings between Markel and Cape Wide, it may be determined that Cape Wide was acting for Markel when amending coverage.")). Cape Wide sold marine insurance from various insurers, including Markel, Quincy Mutual Fire Insurance Co. and Foremost Insurance Company. (PF ¶ 32). Cape Wide first started doing business with Markel in 2000, and from then through the end of 2003, it placed only 10 policies with Markel. (DF ¶¶ 1, 3). On each occasion, other than

-6-

the instant case, Markel issued an endorsement after receiving a request for coverage from Cape Wide.  (DF ¶¶ 4, 5).  The time between the request and receipt of the endorsement varied from days to several months, for reasons unknown to Cape Wide.  (DF ¶¶ 5, 11).

While Cape Wide did, at one time, receive a form letter from Markel addressed to "Dear Markel Marine Agent," Cape Wide does not contend that it was Markel's agent, or that the mere sending of the faxes to Markel resulted in insurance coverage for the vessels.[4]  (See DF ¶ 26).  Rather, as noted above, it was expected that Markel would issue an endorsement in order for there to be coverage.  Moreover, given the large differences in the values between the originally insured yachts and the new yachts, it was expected that Markel would quote new rates for the insurance coverage.  (PF ¶ 46).

## Mr. Madonna's Relationship with Cape Wide and Markel

It is undisputed that Mr. Madonna looked to Cape Wide to obtain insurance for his vessels.  He did not negotiate directly with Markel, make any request that insurance be provided by Markel, or discuss the terms of any coverage with Markel.  Mr. Madonna had been working with William Eldredge, the president of Cape Wide, for twenty-five years. (PF ¶ 31).  Cape Wide acted as Mr. Madonna's broker in connection with auto, home, marine and business insurance policies.  (Id.).  Thus, based on the record before the court, it seems that Mr. Madonna was relying on Cape Wide to select the appropriate carrier.  As

---

[4] Even in the demand letter from Cape Wide's Errors & Omissions Insurer, Cape Wide took the position that it had properly submitted a request for amended coverage, and that Markel should honor the request and extend coverage.  (See PF Ex. E).  Cape Wide never asserted that there could be coverage without any further action by Markel.

alleged in the Counterclaim, Mr. Madonna asked Cape Wide to take "such steps as required so that the Tiara and Crosby were properly insured" and "Cape Wide agreed to do so and Madonna relied on its expertise to obtain marine insurance."  (PF ¶ 14).

There is some evidence in the record that billing for insurance coverage went from Markel to both Mr. Madonna and his insurance agency, Cape Wide.  (Conroy Dep. (attached to DF) at 52-53).  Otherwise there is no evidence of any pre-loss communications directly between Mr. Madonna and Markel.

## I.  ANALYSIS

### A.     Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party."  Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (internal citations omitted).  A material fact is one which has the "potential to affect the outcome of the suit under the applicable law."  Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal citations and quotation omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548,

2553, 91 L. Ed. 2d 265 (1986).  If that burden is met, the opposing party can avoid

summary judgment only by providing properly supported evidence of disputed material

facts that would require trial.  See id. at 324, 106 S. Ct. at 2553.  In evaluating motions for

summary judgment, however, the court will not consider "conclusory allegations,

improbable inferences, and unsupported speculation."  Galloza v. Foy, 389 F.3d 26, 28

(1st Cir. 2004) (internal citation omitted).

### B.    Cape Wide Was Not Markel's Agent

Markel contends that it is entitled to summary judgment because Cape Wide was

acting as an agent for Mr. Madonna, not Markel, and, therefore, Cape Wide's failure to

procure coverage for the vessel cannot result in any liability for Markel.  Where, as here,

Cape Wide acted solely as an insurance broker, and not as an insurance company's agent,

it cannot be deemed an agent of Markel.  "It may be stated as a general proposition that an

insurance agent is a person expressly or impliedly authorized to represent an insurance

company in dealing with third persons in matters relating to insurance. . . .  An insurance

broker is one who acts as a middleman between the insured and insurer and who solicits

insurance from the public under no employment from any special company and who

either places an order for insurance with a company selected by the insured, or, in the

absence of such selection, with a company the broker selects."  Travelers Indem. Co. v.

Nat'l Indem. Co., 292 F.2d 214, 219-20 (8th Cir. 1961) (internal citations omitted).  See

also Mass. Gen. Laws ch. 175, § 162 (distinguishing between insurance brokers and

insurance agents).  Thus, in usual circumstances the "insurance agent is the representative

of the company, and the insurance broker is ordinarily the agent of the insured[.]"

Hudson v. Mass. Prop. Ins. Underwriting Assoc., 386 Mass. 450, 455, 436 N.E.2d 155,

158 (1982) (internal citations omitted).  This is true in the context of maritime insurance

as well, where, as a general rule, "a broker acts as agent for the insured."  Certain

Underwriters at Lloyd's London v. Giroire, 27 F. Supp. 2d 1306, 1313 (S.D. Fla. 1998).

Consequently, where, as here, the broker was "employed to procure insurance, he is the

agent of the person for whom the insurance is procured insofar as matters in connection

with the procurement are concerned."  Travelers Indem. Co., 292 F.2d at 220.  "Unless

there are special conditions or circumstances in the case he is not the agent of the insurer,

and he may not be converted into an agent for the insurance company without some

action on the part of the company or the existence of some facts from which his authority

to represent it as an agent may be fairly inferred."  Id.  See also 3 Couch on Insurance §

45:5 (3d Ed. 2005) ("It has been said that there are two exceptions to the general rule that

an insurance broker is one who acts on behalf of the insured, and not on behalf of the

carrier; the first is custom and usage, and the second is course of dealings between a

broker and an insurance company.").  No such special circumstances exist in the instant

case.

**Actual Authority**

The undisputed facts establish that Cape Wide was not the actual agent of Markel, and did not have authority to bind coverage on behalf of Markel.  Nor are there any facts from which such a grant of authority may be implied.  For example, Cape Wide had no contractual or fixed relationship with Markel, and merely submitted requests for coverage to Markel, thereby acting as Mr. Madonna's agent not Markel's.  See Certain Under-writers at Lloyd's London, 27 F. Supp.2d at 1313 (broker "had no contractual relationship with Lloyds and no authority to bind coverage on behalf of Lloyds"); Hudson, 386 Mass. at 456, 436 N.E.2d at 158 (where company had "no fixed and permanent relationship" with the insurer, and merely submitted application to insurer, company "was acting as an insurance broker and, therefore, it was the agent of the plaintiff" insured).  As further evidence that it was not Markel's agent, Cape Wide was free to submit an application to other insurance companies as well.  See Jefferson Ins. Co. of N.Y. v. Huggins, No. 3:99-CV-1315-H, 2000 WL 1881201, at *2 (N.D. Tex., July 10, 2000) (unpub. dec.) (court concludes that a "marine insurance broker is generally considered the agent of the insured, not the insurer," and finds that this conclusion was buttressed by the fact that the broker had obtained coverage for the insured from various insurers over the years).  Cape Wide does not contend that it had authority to issue insurance coverage, but rather admits that it could, at most, submit an application which Markel had the option to accept, after which Markel had to issue the insurance in order for there to be coverage.  Under such circumstances, Cape Wide was acting as Mr. Madonna's agent when it sought to obtain

insurance, and its actions did not bind Markel.  <u>See</u> <u>also</u> <u>Century Indem. Co. v. Jameson</u>,

333 Mass. 503, 504, 131 N.E.2d 767, 768-69 (1956) (where insured requested broker to

obtain an insurance policy, broker was the agent of the insured, not of the insurance

company), and cases cited.

     The cases relied on by Mr. Madonna do not compel a different result.  For

example, in <u>Am. Fid. Fire Ins. Co. v. Johnson</u>, 177 So.2d 679 (Fla. 1st Dist. 1965), there

was an arrangement between the broker and the insurance company whereby the

application submitted by the broker, either for a new policy or for a renewal, was deemed

accepted as of the date it was postmarked if accompanied by the proper premium.  <u>Id.</u> at

680-81. The insured paid the broker the proper premium and submitted his written request

for renewal.  <u>Id.</u> at 681.  Through mishandling, the application was not submitted by the

broker in a timely manner, and eventually was rejected due to intervening events.  <u>Id.</u>

Before the notice of rejection was issued, there was a serious accident in which a 13 year

old boy was killed and a 10 year old boy was injured.  <u>Id.</u>  Under such circumstances, the

broker was found to be acting as the agent of the insurance company with respect to the

renewal of the policy, as a result of which the court found the driver to be insured at the

time of the accident.  <u>Id.</u>  In contrast to the course of dealing between the broker and the

carrier in that case, however, the undisputed facts in the instant case establish that Markel

required more than a faxed request from Cape Wide before it would to provide coverage.

Not only would Markel have been expected to submit a quote for the insurance of the

significantly more expensive vessels, but also such a quote would have had to be accepted

by Mr. Madonna. Thereafter, Markel would still have needed to issue the policy. Thus, the custom and usage between Cape Wide and Markel defeats any claim that Cape Wide was acting as the agent of the insurance carrier in connection with obtaining the insurance. See also Lien Ho Hsing Steel Enters. Co., Ltd., 738 F.2d 1455, 1458 (9th Cir. 1984) (while the parties or state law may establish a different arrangement, "it is the generally accepted custom and usage for marine underwriters to deal with insurance brokers as agents of the insured").

Hobbs Brook Agency, Inc. v. N. River Ins. Co., 7 Mass. App. Ct. 885, 386 N.E.2d 1315 (1979), on which Mr. Madonna relies, is also easily distinguishable. There the middleman insurance broker misappropriated two thirds of a three-year prepaid premium. Id. at 885, 386 N.E.2d at 1316. The carrier sought to cancel the policy for non-payment at the beginning of the second year, since it never received the funds. Id. In concluding that the broker was acting as the carrier's agent in connection with the collection of funds, and that the carrier, therefore, must bear the loss, the court relied on a controlling New York statute which expressly held that if an insurer delivers the policy to the broker (which was found to have been done), then the broker was deemed to be the agent of the insurer for purposes of receiving, for the insurer's account, payment of premiums. Id. at 886, 386 N.E.2d at 1317. In addition, the court found that the broker had apparent authority to accept the premium payment in question because after the broker had requested the insurance, the insurance carrier issued the policy and sent it back through a line of brokers, thereby giving the broker apparent authority to obtain payment. Id. Here,

-13-

in contrast, the insurance carrier never acknowledged the request for insurance coverage, and, therefore, never bestowed any authority on Cape Wide. Nor is there any controlling statute. The facts of Hobbs are inapposite to the instant case.

The other case on which Mr. Madonna relies, Knight v. Merchants & Manuf. Ins. Co. of N.Y., 188 S.W.2d 77 (Mo. Ct. App. 1945), fully supports this court's conclusion that Cape Wide was acting as the broker for Mr. Madonna, and could not bind Markel. In Knight, the question was whether the insurance carrier was bound by information given to the broker by the insured about the status of title to the property. In finding that the carrier was not bound, the court noted the "general rule" that "an insurance broker is an agent for insured. To constitute him otherwise, it must be shown that he was authorized in the particular instance to represent the insurer as its agent." Id. at 82. The court considered the fact that the insured had obtained, and renewed, the same insurance from the same company, through the same broker, for years. Nevertheless, the court found "no evidence that will justify the conclusion that the authority of Morris, a broker, to deliver the policy and to receive premiums therefor gave him authority, impliedly or otherwise, to receive notice of a title controversy respecting the property covered by the policy so as to bind the defendant by such knowledge so acquired." Id. at 83. Similarly, in the instant case there is no evidence that Markel authorized Cape Wide to bind insurance on its behalf. The undisputed facts establish that Cape Wide was acting as agent for Mr. Madonna.

## **Apparent Authority**

-14-

Mr. Madonna's claim that Cape Wide had apparent authority to bind Markel is equally without merit.  There is no evidence that Markel acted in any way to lead Mr. Madonna to believe that Cape Wide was its agent.

> Apparent or ostensible authority results from conduct by the principal which causes a third person reasonably to believe that a particular person has authority to enter into negotiations or to make representations as his agent ...  If a third person goes on to change his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized.

Hudson, 386 Mass. at 457, 436 N.E.2d at 159 (internal punctuation and citations omitted).

The critical focus of the inquiry, therefore, is the principal's conduct and the insured's reliance on such conduct.  See Jefferson Ins. Co. v. Roberts, 349 F. Supp. 2d 101, 108 (D. Mass. 2004) (broker's statements as to the extent of coverage, which were contradicted by the actual policy, were not binding on the insurance carrier where broker had no actual authority to bind the carrier, and there were no facts suggesting that the principal's conduct caused the insured to reasonably believe that the broker had the authority to bind the carrier).

In the instant case there is no evidence whatsoever that Markel's conduct caused Mr. Madonna to reasonably believe that Cape Wide was Markel's agent. All that Mr. Madonna points to is that Cape Wide followed the appropriate procedure in requesting the insurance from Markel, and that there had been "delays of up to three months or more in receiving endorsements from Markel confirming the requested changes in the existing policies." See Madonna Br. at 7. Mr. Madonna simply ignores the undisputed facts that given the increase in value of the vessel, it would have been the practice for Markel to have offered a quote for the cost of coverage and to have waited for an acceptance before it issued the endorsements. At most Mr. Madonna has offered an excuse as to why Cape Wide did not follow its own procedures to assure that Markel had accepted the application for insurance. These facts, even if known to Mr. Madonna, would not have reasonably led him to believe that Cape Wide was Markel's agent. Even more importantly, there is no evidence that Mr. Madonna was aware of the procedures between Cape Wide and Markel, or whether those procedures were followed. Consequently, the record does not support a finding that Mr. Madonna relied on these facts, and his claim of apparent authority must fail.

Mr. Madonna also has pointed to the form letter Markel sent to Cape Wide at some point addressed to "Dear Markel Marine Agent" to support his claim. However, there is no evidence that he was aware of that letter before this litigation started, or that he relied on it. Finally, the fact that bills were sent both to Mr. Madonna and Cape Wide does not establish anything beyond that Cape Wide may have been entitled to accept premiums.

-16-

He could not have reasonably relied on such billing to believe that Cape Wide was empowered to issue new insurance on new vessels in the name of Markel.  See Knight, 188 S.W.2d at 83 (fact that broker was authorized to deliver policy and receive premiums did not give him authority, "impliedly or otherwise" to receive notice of a title controversy about which the carrier should have known).

For all these reasons, this court concludes that Cape Wide did not have actual or apparent authority to bind Markel.  Therefore, the undisputed facts establish that Markel did not insure the destroyed vessel.

### C.    Mr. Madonna Is Not a Third-Party Beneficiary

Mr. Madonna contends that he is a third-party beneficiary of the agency relationship between Cape Wide and Markel, and, therefore "is entitled to be indemnified by Markel for the loss of his vessel."  See Madonna Br. at 9-10.  This argument must fail because (1) as detailed above Cape Wide was not Markel's agent, and (2) there was no contractual relationship between Cape Wide and Markel whereby Markel was obligated to issue the insurance applied for by Cape Wide.

The ability of a third-party beneficiary to recover under a contract to which he or she is not a named party is premised on the proposition that "[a] promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty."  Flattery v. Gregory, 397 Mass. 143, 148, 489 N.E.2d 1257, 1261 (1986) (quoting Restatement (Second) of Contracts § 315).  In the instant case, however, and as detailed above, there was no contract between Cape Wide

-17-

and Markel which required Markel to issue a policy just because Cape Wide applied for

such coverage.  Absent a contract, Mr. Madonna cannot recover as a third-party

beneficiary.  See Baldwin v. Mortimer, 403 Mass. 142, 145, 526 N.E.2d 776, 778 (1988)

(where there was no evidence of a contract requiring a broker to obtain an insurance

policy without a specified exclusion, injured party cannot recover as third-party

beneficiary of the alleged contract).

### D.    Mr. Madonna Cannot Recover More Than The Amount of His Loss

Finally, Cape Wide, as assignee of Mr. Madonna's claims, argues that it is entitled

to recover the full amount of the value of the destroyed vessel, despite the fact that Cape

Wide has already paid Mr. Madonna $270,000.00.  There is no question that Mr.

Madonna stated a claim against Cape Wide for failure to obtain the insurance he

requested.  See, e.g., Campione v. Wilson, 422 Mass. 185, 195, 661 N.E.2d 658, 664

(1996) ("When an insured makes an agreement with a broker calling for the purchase of

particular coverage, the insured may reasonably rely on the broker's superior expertise

and may assume that the broker has performed his duty"); Haeuber v. Can-Do, Inc., 666

F.2d 275, 280 (5th Cir. 1982) ("The duty of a broker is to obtain, not merely request, the

coverage needed" and a broker may be liable in negligence in failing to inquire why no

response had been received to application for insurance).  Thus, on its face, the payment

to Mr. Madonna by Cape Wide was in satisfaction of Cape Wide's own potential liability.

As Cape Wide has no direct claim against Markel, this court will not speculate as to what liability, if any, Markel may have to Cape Wide.  As assignee of Mr. Madonna's claims, however, Cape Wide has no greater rights than those enjoyed by Mr. Madonna. See R.I. Hosp. Trust Nat'l Bank v. Ohio Cas. Ins. Co., 789 F.2d 74, 81 (1st Cir. 1986) (quoting Restatement (Second) of Contracts § 336(1)).  "A plaintiff is not entitled to duplicative damages: it may recover only the amount of damages it actually suffered." Garshman Co., Ltd. v. Gen. Elec. Co., 176 F.3d 1, 5 (1st Cir. 1999).  Since Mr. Madonna has already recovered $270,000.00, if he were entitled to recover from Markel, Markel's obligation to Mr. Madonna would be reduced by this amount.  There is no merit to the contention that the plaintiff is entitled to recover twice for the same loss.

### III.  CONCLUSION

For all the reasons detailed herein, the motion of Markel American Insurance Co. for Summary Judgment (Docket No. 33) is ALLOWED.  A declaratory judgment shall issue in favor of the plaintiff on its Amended Complaint that: the plaintiff Markel American Insurance Co. ("Markel") did not ever issue a policy of marine insurance to the defendant Robert Madonna covering the 2000 30 ft Crosby Hawk power vessel that was destroyed by fire on or about December 10, 2003 at the Crosby Yacht Yard in Osterville, Massachusetts, or otherwise afford insurance coverage for said vessel.  Further, judgment shall enter in favor of Markel on Counts I, II and V of the Counterclaim of Robert Madonna, and those counts shall be dismissed.

_____ / s / Judith Gail Dein _____
Judith Gail Dein
United States Magistrate Judge